Case No. 22-2874

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

ROUMANN CONSULTING INC. and RONALD ROUSSE,

*Plaintiffs-Appellants,*

vs.

SYMBIONT CONSTRUCTION, INC., SYMBIONT HOLDING COMPANY, INC.,
SYMBIONT SCIENCE, ENGINEERING AND CONSTRUCTION, INC., THOMAS
BACHMAN, SONYA K. SIMON, ESQ., EDWARD T. MANNING, JR., and
TIMOTHY P. NELSON,

*Defendants-Appellees.*

---

Appeal from the United States District Court
For the Eastern District of Wisconsin
The Honorable Lynn Adelman, Presiding Judge
Case No. 18-CV-1551

---

BRIEF OF THE DEFENDANTS-APPELLEES
SYMBIONT CONSTRUCTION, INC., SYMBIONT HOLDING COMPANY, INC.,
SYMBIONT SCIENCE, ENGINEERING AND
CONSTRUCTION, INC., THOMAS BACHMAN, SONYA K. SIMON, ESQ.,
EDWARD T. MANNING, JR. AND TIMOTHY P. NELSON

---

GODFREY & KAHN, S.C.
Andrew S. Oettinger (Counsel of Record)
Christie B. Carrino
833 E. Michigan St., Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Emails: Aoettinger@gklaw.com
         Ccarrino@gklaw.com

# DISCLOSURE STATEMENTS

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2874

Short Caption: Roumann Consulting Inc., et al v. Symbiont Construction, Inc., et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Symbiont Construction, Inc., Symbiont Holding Company, Inc., Symbiont Science, Engineering and Construction, Inc.,

Thomas C. Bachman, Sonya K. Simon, Edward T. Manning, Jr., Timothy P. Nelson

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Godfrey & Kahn, S.C.

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

Mead & Hunt, Inc.--to Symbiont Construction, Inc. and Symbiont Science, Engineering and Construction, Inc.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)     Provide information required by FRAP 26.1(b)    Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/Andrew S. Oettinger                    Date: November 10, 2022

Attorney's Printed Name:  Andrew S. Oettinger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ✓   **No** ☐

Address:  Godfrey & Kahn, S.C.

833 E. Michigan Street, Suite 1800, Milwaukee, WI  53202-5615

Phone Number: (414) 273-3500                    Fax Number: (414) 273-5198

E-Mail Address: aoettinger@gklaw.com

rev. 12/19 AK

Save As   Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2874

Short Caption: Roumann Consulting Inc., et al v. Symbiont Construction, Inc., et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Symbiont Construction, Inc., Symbiont Holding Company, Inc., Symbiont Science, Engineering and Construction, Inc.,

Thomas C. Bachman, Sonya K. Simon, Edward T. Manning, Jr., Timothy P. Nelson

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Godfrey & Kahn, S.C.

(3)   If the party, amicus or intervenor is a corporation:

i)   Identify all its parent corporations, if any; and
Mead & Hunt, Inc.--to Symbiont Construction, Inc. and Symbiont Science, Engineering and Construction, Inc.

ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
None

(4)   Provide information required by FRAP 26.1(b)   Organizational Victims in Criminal Cases:

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/Christie B. Carrino   Date: November 10, 2022

Attorney's Printed Name: Christie B. Carrino

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ✓   No ☐

Address: Godfrey & Kahn, S.C.

833 E. Michigan Street, Suite 1800, Milwaukee, WI 53202-5615

Phone Number: (414) 273-3500   Fax Number: (414) 273-5198

E-Mail Address: ccarrino@gklaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

DISCLOSURE STATEMENTS ........................................................i

TABLE OF CONTENTS....................................................................iii

TABLE OF AUTHORITIES ......................................................... vii

APPELLEES' JURISDICTIONAL STATEMENT ........................................1

Statement Concerning District Court's Jurisdiction.................................1

Statement Concerning Appellate Jurisdiction...........................................1

STATEMENT OF THE ISSUES FOR REVIEW ........................................2

STATEMENT OF THE CASE ........................................................3

I.      Symbiont Hires Rousse to Estimate, Bid, Secure New Business, and Serve as Vice President of Estimating, Project Controls and Major Projects........................................................................4

II.     Rousse Keeps a List of Contacts and Past Project Information. ..................6

III.    Rousse forms Roumann Consulting, Inc. and Enters into the Independent Contractor Agreement with Symbiont. ....................................7

IV.     Symbiont Purchases and Implements a Database Called Procore.................9

V.      Symbiont Terminates the Agreement and Roumann Sues Symbiont *(Roumann I)*. .........................................................................10

VI.     Roumann and Rousse's Claims Against Symbiont in *Roumann I*. ...............12

VII.    Symbiont's Counterclaims Against Roumann. .............................................12

VIII.   Roumann Seeks Leave to File a Second Amended Complaint....................13

IX.     Symbiont Deposits $550,000 into the Court Registry Investment System. ...........................................................................14

X.      Roumann Files Its Second Lawsuit Against Symbiont. ................................ 15

XI.     The District Court Dismisses All Claims Except Those Relating
        to Confidential Information. ............................................................. 17

XII.    The Parties Move for Summary Judgment. ..................................... 19

XIII.   The District Court Grants Symbiont's Summary Judgment
        Motion. .......................................................................................... 20

SUMMARY OF ARGUMENT .................................................................. 21

STANDARD OF REVIEW ........................................................................ 24

I.      Standard of Review of the District Court's Dismissal
        of Count VI. ................................................................................... 24

II.     Standard of Review of the District Court's Order Granting
        Summary Judgment. ....................................................................... 25

ARGUMENT ............................................................................................. 27

I.      Rousse and Roumann's Claim for Conspiracy to Injure
        Business (Count VI) Arises from the Same Operative Facts
        as *Roumann I*, Should Have Been Raised in *Roumann I*, and is,
        Therefore, Subject to the Rule Against Claim Splitting. ................ 27

        A. The District Court's determination that Count VI was barred
           by the rule against claim splitting was a matter of docket
           management, and that determination is reviewed for abuse of
           discretion not *de novo*. ........................................................... 28

        B. A case is duplicative and subject to the anti-claim splitting
           doctrine if the claims, parties and available relief do not
           significantly differ between the two actions. ............................ 29

II.     The Court did not Err in Finding that the Injury to Business
        Claim Also Required Dismissal on the Merits. ............................. 35

A. Rousse and Roumann have concocted a new theory of malice on appeal and the Complaint itself alleges a rational business motive. ......................................................................................35

B. The Complaint does not allege self-interest among the corporate officers............................................................................38

III.    Rousse and Roumann Failed to Identify Specific "Confidential Information" Subject to Protection under the Agreement or that Symbiont Misused that Information............................................40

A. The District Court's determination that Rousse and Roumann failed to show Symbiont misused any alleged Confidential Information was based on undisputed facts and so the Court reviews this determination under a "clearly erroneous" rather than *de novo* standard. ...................................41

B. Rousse and Roumann never established with any meaningful degree of specificity what his Confidential Information consisted of, even in response to a dispositive motion. ...........................43

C. Rousse and Roumann never established that Symbiont used their "Confidential Information" in contravention of the Agreement and insufficiently relies only on Symbiont's use of Procore to allege misuse. ...................................................47

D. The Court correctly held that Rousse and Roumann learned and collected the Confidential Information as a part of their job or contractual responsibilities...............................................50

E. Even if Rousse and Roumann could prove Symbiont used Confidential Information, Symbiont was entitled to use the information to bid on and secure projects following termination of the Agreement.......................................................54

CONCLUSION..............................................................................................56

CERTIFICATE OF COMPLIANCE ...........................................................58

PROOF OF SERVICE ...................................................................................... 59

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Abbott Laboratories v. Norse Chem. Corp.*,
33 Wis. 2d 445, 147 N.W.2d 529 (1967) ...................................................... 46

*Admiral Ins. Co. v. Paper Converting Mach. Co.*,
2012 WI 30, 339 Wis. 2d 291, 811 N.W.2d 351 ........................................... 51

*Alioto v. Town of Lisbon*,
651 F.3d 715 (7th Cir. 2011) ....................................................................... 33

*Betz v. Diamond Jim's Auto Sales*,
2014 WI 66, 355 Wis. 2d 301, 849 N.W.2d 292 ........................................... 55

*BondPro Corp. v. Siemens Power Generation, Inc.*,
463 F.3d 702 (7th Cir. 2006) ....................................................................... 49

*Cent. States, Se. & Sw. Pension Fund v. Slotky*,
956 F.2d 1369 (7th Cir. 1992) ................................................................ 25, 41

*Elbe v. Wausau Hosp. Ctr.*,
606 F. Supp. 1491 (W.D. Wis. 1985) ........................................................... 38

*French v. Wachovia Bank, N.A.*,
722 F.3d 1079 (7th Cir. 2013) ................................................................ 25, 41

*Gary Van Zeeland Talent, Inc. v. Sandas*,
84 Wis. 2d 202, 267 N.W.2d 242 (1978) ............................................... 46, 56

*Horwitz v. Alloy Auto. Co.*,
992 F.2d 100 (7th Cir. 1993) ....................................................................... 30

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ....................................................................... 44

*In the Matter of Lisse*,
905 F.3d 495 (7th Cir. 2018) ....................................................................... 14

*Lane v. Structural Iron Workers Local No. 1 Pension Tr. Fund,*
  74 F. 4th 445 (7th Cir. 2023) ............................................................37, 40

*Lapka v. Chertoff,*
  517 F.3d 974 (7th Cir. 2008) ....................................................................25

*Maleki v. Fine-Lando Clinic Chartered, S.C.,*
  162 Wis. 2d 73, 469 N.W.2d 629 (1991) ..................................................35

*Marine Travelift, Inc. v. Marine Lift Sys., Inc.,*
  No. 10-C-1046, 2013 WL 6255689 (E.D. Wis. Dec. 4, 2013)....................44

*McCluney v. Jos. Schlitz Brewing Co.,*
  489 F. Supp. 24 (E.D. Wis. 1980) ............................................................38

*McDougall v. Pioneer Ranch Ltd. P'ship,*
  494 F.3d 571 (7th Cir. 2007)...............................................................25, 41

*McReynolds v. Merrill Lynch & Co.,*
  694 F.3d 873 (7th Cir. 2012)..............................................................25, 28

*Mendelson v. Blatz Brewing Co.,*
  9 Wis. 2d 487, 101 N.W.2d 805 (1960) ...................................................39

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty,*
  808 F. Supp. 1555 (S.D. Fla. 1992) ....................................................51, 53

*N. Elec. Co. v. Torma,*
  819 N.E.2d 417 (Ind. Ct. App. 2004) .....................................................51

*Phelps v. Physicians Ins. Co. of,*
  Wis., Inc., 2005 WI 85, 282 Wis. 2d 69, 689 N.W.2d .........................26, 42

*Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.,*
  614 F.3d 375 (7th Cir. 2010)....................................................................50

*Raytheon Co. v. Cray, Inc.,*
  330 F.R.D. 525 (W.D. Wis. 2019) ............................................................48

*Rexing Quality Eggs v. Rembrandt Enters., Inc.,*
  953 F.3d 998 (7th Cir. 2020)..............................................................29, 32

*Sasqua Grp., Inc. v. Courtney*,
　No. CV 10-528, 2010 WL 3613855 (E.D. N.Y. Aug. 2, 2010) .................................. 45

*Scholz v. United States*,
　18 F.4th 941 (7th Cir. 2021) .............................................................. 25, 28, 29, 30, 34

*State v. Dried Milk Prods. Co-op*,
　16 Wis. 2d 357, 114 N.W.2d 412 (1962) .................................................... 50

*Torain v. AT&T Mgmt. Servs., LP*,
　353 Fed. App'x 37 (7th Cir. 2009).............................................................. 30

*Townsend v. ChartSwap, LLC*,
　399 Wis. 2d 599, 967 N.W.2d 21 (2021) .................................................... 50

*U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC*
　*v. Vill. at Lakeridge, LLC*,
　138 S. Ct. 960 (2018) .............................................................. 27, 41, 42, 43

*United States v. Resnick*,
　594 F.3d 562 (7th Cir. 2010)........................................................................ 42

*Virnich v. Vorwald*,
　664 F.3d 206 (7th Cir. 2011)........................................................................ 36

*Wallis v. Fifth Third Bank*,
　443 Fed. App'x 202 (7th Cir. 2011).......................................................... 29

## Statutes

28 U.S.C. Section 1291 ........................................................................................ 2

28 U.S.C. Section 1332 ........................................................................................ 1

Wis. Stat. § 814.61(4) .................................................................................. 26, 42

Wis. Stat. § 134.01.............................................................................. 16, 17, 18, 35, 38

**Rules**

Circuit Rule 28(b) ...............................................................................1

Fed. R. Civ. P. 8 ................................................................................33

Fed. R. Civ. P. 15 ..............................................................................33

Fed. R. Civ. P. 15(a)(2) ......................................................................33

Fed. R. Civ. P. 16 ..............................................................................33

Fed. R. Civ. P. 16(b) .........................................................................33

Fed. R. Civ. P. 38 ..............................................................................42

**Other Authorities**

Restatement (Third) of Unfair Competition § 42 (Am. L. Inst. 1995).....................51

**APPELLEES' JURISDICTIONAL STATEMENT**

The jurisdictional statement of Appellants' Brief is not complete and correct. Pursuant to Circuit Rule 28(b) Appellees provide the following complete jurisdictional statement:

**Statement Concerning District Court's Jurisdiction**

The Eastern District of Wisconsin had jurisdiction over this dispute pursuant to 28 U.S.C. Section 1332 (diversity of citizenship). Complete diversity of citizenship existed between the parties. In particular, Plaintiff-Appellant Roumann Consulting, Inc., is a corporation organized under the laws of Ontario, Canada, with its principal place of business in Belle River, Ontario. Plaintiff-Appellant Ronald Rousse was a Canadian citizen at the time of filing this action, and now is a citizen of Michigan.[1]

Defendant-Appellee Symbiont Construction, Inc. is a Wisconsin corporation with its principal place of business located in West Allis, Wisconsin. Defendant-Appellee Symbiont Science, Engineering and Construction, Inc. is a Wisconsin corporation with its principal place of business located in West Allis,

---

[1] The citizenship of Plaintiff-Appellant Ronald Rousse is not within the direct knowledge of Defendants-Appellees. Appellants' Jurisdictional Statement was inconsistent with the record as to Ronald Rousse's residence and citizenship. *Compare* R. 1 ¶ 2, with Opening Br. at 1. Upon our request that Appellants' counsel verify the new residence information, counsel supplemented its description which we have relied upon in this statement.

Wisconsin. Defendant-Appellee Symbiont Holding Company, Inc. is a Wisconsin corporation with its principal place of business located in West Allis, Wisconsin. Defendants-Appellees Thomas Bachman, Sonya Simon, Edward Manning and Timothy Nelson are Wisconsin citizens.

The amount in controversy exceeds $75,000 exclusive of interest and costs. Plaintiffs-Appellants claim damages of $4,553,000 in compensatory damages.

## Statement Concerning Appellate Jurisdiction

This is an appeal from a District Court's final decision disposing of all remaining claims. This Court has jurisdiction pursuant to 28 U.S.C. Section 1291. The judgment to be reviewed was entered on September 30, 2022. The Notice of Appeal was filed on October 21, 2022.

## STATEMENT OF THE ISSUES FOR REVIEW

1.     Did the District Court abuse its discretion when it dismissed Rousse and Roumann's Civil Conspiracy claim on the basis that the claim involved the same parties and operative facts as Rousse and Roumann's earlier filed lawsuit that was still pending in the Eastern District of Wisconsin?

2.     Did the District Court err in finding that Rousse and Roumann's Civil Conspiracy claim failed to state a claim because the parties to the alleged

conspiracy did not act with malice and were not separate parties to the alleged

conspiracy?

3.     Does the record contain any competent evidence identifying specific

Confidential Information that Symbiont used in violation of the parties' written

contract?

## STATEMENT OF THE CASE

Appellants' statement of facts is incomplete. Conspicuously lacking from

Appellants' statement is an explanation of the income generated from their

relationship with Symbiont, the years spent working for Symbiont as an

employee (as opposed to a consultant), and the long-running failure and refusal

to identify the purported confidential information and any misuse of that

information that now forms the basis of this dispute. The Appellants also fail to

explain why the District Court denied their motion for leave to file a second

amended complaint, which precipitated this second, successive action. For a

complete treatment of the events giving rise to the dispute see R. 14, R. 118, and

R. 85-14 which informed the District Court's decisions.

This is the second of two lawsuits filed by Appellants in which they seek

additional compensation stemming from the alleged breach or allegedly tortious

conduct in violation of a written Independent Contractor Agreement.

The parties to the contract are sophisticated commercial entities, and they agree they entered into an unambiguous, integrated contract governing their relationship (R. 82-2; R. 118, A-29). Defendant-Appellee Symbiont Construction, Inc. ("Symbiont"), formerly known as T.V. John & Son, Inc. was a construction general contractor. (R. 118, A-28.) Plaintiffs-Appellants are Ron Rousse and his company, Roumann Consulting, Inc. (R. 118, A-28-29.) Rousse is an estimator and a construction manager, with a focus on certain national big box retailers who tend to develop similarly-built structures. (R. 118, A-28.) The remaining Defendants-Appellees are affiliates of Symbiont, and the individual parties are alleged to be the managers and owners of Symbiont.[2] (R. 14, A-2; R. 1 ¶¶ 3-13.)

## I. Symbiont Hires Rousse to Estimate, Bid, Secure New Business, and Serve as Vice President of Estimating, Project Controls and Major Projects.

Symbiont first hired Rousse in late 2011, and his job was to estimate, bid on, and seek out building projects for big box retailers such as Kroger, The Fresh Market, and Menards. (R. 118, A-29.) Rousse signed an employment letter that memorialized his employment terms, which included a base salary, benefits, and

---

[2] For much of the relevant time period, Symbiont was known as T.V. John & Son, Inc., which changed its name to Symbiont Construction, Inc. on June 8, 2018. (R. 118, A-28; R. 112 ¶ 4.) Symbiont and T.V. John & Son, Inc. are the same legal entity. (R. 118, A-28.)

his eligibility to receive a commission for new construction projects that he successfully bid on and secured on behalf of Symbiont, and which Symbiont would then contract for and construct. (*Id.*; R 82-1.[3])

The bidding and contracting process for these construction contracts followed a routine. First, an end-client would solicit bids for a project, such as construction of a new Menards store. (R. 118, A-30.) Rousse, working as Symbiont's employee, would estimate and then bid on the prospective projects. (R. 118, A-30-31.) If a bid was successful and Symbiont was awarded the contract, Symbiont would enter into a general contract with the big box retailer. (R. 118, A-41.) Rousse also coordinated Symbiont's entry into contracts with subcontractors who were selected to perform the work for a particular project. (*Id.*) Rousse would provide subcontractor contact information to Symbiont, Symbiont would send invitations to bid to the interested subcontractor, and the subcontractor would ultimately enter into a contract with Symbiont. (*Id.*) Rousse served in this role, estimating, facilitating contracts with subcontractors, bidding work, and securing construction contracts for his employer, for roughly three years. (R. 118, A-29, A-40-41.)

---

[3] The employment letter is located at R. 82-1.

## II.     Rousse Keeps a List of Contacts and Past Project Information.

Symbiont was not Rousse's first employer, nor was it the first general contractor for which Rousse provided bidding and estimating services. Prior to working for Symbiont, Rousse was employed by another general contractor, F.H. Martin, where Rousse also estimated and bid construction projects. (R. 97 ¶ 69.) F.H. Martin introduced Rousse to the big box retailer Kroger. (*Id.*). Starting at least as early as his time at F.H. Martin, Rousse began compiling a list of information from past projects that included the subcontractor contact information, location, bid history, and project performance and experience. (R. 118, A-31.)

Rousse used these collected datapoints to create bidding packages for Symbiont, and he used them to estimate, bid, and secure work on behalf of Symbiont. (R. 118, A-32.) Indeed, at least some of his collected datapoints used for Symbiont projects were contained in spreadsheets bearing an F.H. Martin watermark. (R. 97 ¶ 68.) As Rousse estimated and prepared bids for Symbiont for Symbiont's prospective projects, he added the information (subcontractor names,

prices, locations) to the list. (R. 118, A-32.) Rousse continued this practice from

2012 to 2015. (*Id.*)[4]

### III.    Rousse forms Roumann Consulting, Inc. and Enters into the Independent Contractor Agreement with Symbiont.

In early 2015, after working as Symbiont's employee for more than three

years, Rousse formed Roumann Consulting, Inc. (R. 118, A-29.) Roumann

entered into a new contract – the Independent Contractor Agreement—with

Symbiont on March 26, 2015 (the "Agreement").[5] (R. 82-2.) Rousse continued to

bid projects for Symbiont during the transition from Rousse as employee to

Roumann as independent contractor. (R. 97 ¶ 13.) Under the Agreement,

Roumann was to perform the same services he performed as an employee, which

the Agreement characterized as "bidding, estimating, and project management

services." (R.118, A-29-30.)

Like the terms of Rousse's employment, the Agreement provided that

Symbiont would pay Roumann an hourly fee for labor, plus a commission for

certain projects. (R. 82-2.) The commission was calculated as 30% of net profit

---

[4] Rousse asserts, without citation to an undisputed fact, that "Rousse continued to use and collect these data points while *consulting* for T.V. John from 2012 to 2015." (emphasis added) Opening Br. at 4. To be clear, it is undisputed that Rousse was an employee, not a consultant, during this time period. (R 118, A-29; R. 97 ¶ 12.)

[5] A copy of the Agreement is at R. 82-2.

that Symbiont realized (collected) from all construction contracts Symbiont

entered into with Menards, Kroger, L.A. Fitness or The Fresh Market during the

term of the Agreement, and for the two-year period following termination.[6] (*Id.*)

The Agreement also introduced the concept of "Confidential Information"

that may be exchanged between the parties, defining it as:

> [T]he Disclosing Party's information that is proprietary or
> confidential in nature or confidential or proprietary
> information that is licensed to the Disclosing Party and
> includes, but is not limited to, the Disclosing Party's manner
> and method of conducting business, customer proposals,
> concepts, ideas, plans, methods, market information, technical
> information and the Disclosing Party's client, prospective
> client and contact lists.

(*Id.*)

The Agreement further provides that Roumann and Symbiont may

disclose to the other confidential information for the purpose of performing

under the Agreement, and provides the parties' acknowledgement that

"Confidential Information" (1) has "independent economic value," (2) "is not

generally known to the public or to others who could obtain economic value

from its disclosure or use," (3) "is and has been[] subject to a reasonable effort by

the Disclosing Party to maintain its secrecy and confidentiality," and (4) "has

---

[6] Exhibit A to the Agreement states that Symbiont agrees to pay Roumann 30% of the Net Profit
Realized by Symbiont for projects solicited by Roumann and accepted by Symbiont.

been developed at great expense to the Disclosing Party and is necessary for the Disclosing Party's conduct of its business." (*Id.*)

If information meets the definition and requirements above, the Agreement states that the receiving party agrees "not to, directly or indirectly, use or disclose [the Confidential Information], except to the extent necessary to perform its obligations hereunder." (*Id.*) This restriction and obligation was in effect during the term of the Agreement, and for two years thereafter. (*Id.*) Finally, the termination provision of the Agreement provides that Roumann was required to return to Symbiont all property, including Confidential Information, at termination. (*Id.*) The Agreement contained no reciprocal requirement for Symbiont to return anything to Roumann. (*Id.*)

## IV. Symbiont Purchases and Implements a Database Called Procore.

In 2015, after Symbiont and Roumann entered the Agreement, Symbiont began to use a program called Procore that automated administrative aspects for bidding potential work and project management. (R. 118, A-33.) Symbiont personnel added to Procore information about its construction contracts, its subcontractors, subcontractor bids, change orders, and contact lists. (*Id.*) The information necessarily included information from Symbiont projects that Rousse, and then Roumann, bid on behalf of Symbiont. (*Id.*) When projects were

bid or secured, the underlying contract, bids and subcontractor information would be added to the database. (*Id.*) Rousse and Roumann knew Symbiont was using Procore to track information and bid on projects, and that Symbiont documented all of the information about the bidding process and awarded contracts by uploading it to Procore "[o]n a per project basis over two years." (R. 118, A-42; R. 82 ¶ 32.) Symbiont used Procore for most of its projects, and not just those where Rousse or Roumann assisted with bidding. (R. 118, A-34.)

Years later, Rousse and Roumann would contend that (among other things) the entirety of the contents of Procore, whatever the origin, constituted their "Confidential Information." (*Id.*)[7]

## V.   Symbiont Terminates the Agreement and Roumann Sues Symbiont (*Roumann I*).

On August 21, 2017 Symbiont sent Roumann written notice that it was terminating the Agreement. (R. 118, A-34.) The notice of termination stated that Symbiont intended to make commission payments to Rousse for projects Symbiont accepted during the two-year period following termination, pursuant to Section IV(b) of the Agreement. Symbiont did not state that it was terminating the Agreement for "Willful Misconduct." (R. 118, A-34-35.) A termination for

---

[7] It is undisputed that Rousse has never accessed or otherwise used Procore. (R. 97 ¶ 29.)

Willful Misconduct would have meant Roumann had no right to receive commissions from potential new contracts for Kroger, The Fresh Market, or Menards that Symbiont would enter into during the two-year period following termination. (R. 82-2 § 4.2.)

Roumann, through its counsel, responded the next day, acknowledging the termination and stating Roumann's expectation to be paid a commission of 30% net profit realized from projects accepted by Symbiont during the two years following termination. (R. 90-20 at 5.) Roumann did not raise any concerns or threatened claims concerning the alleged misuse of confidential information in any of this correspondence. On September 22, 2017, Symbiont paid $56,038.44 to Rousse as a post-termination payment. (R. 14, A-6.)

Following termination, Symbiont continued to bid projects subject to the Agreement (*i.e.*, projects for Kroger, The Fresh Market, and Menards) which would yield Roumann 30% of net profit realized. After termination, Roumann also bid on projects on behalf of other general contractors, using information he obtained while working for Symbiont. (R. 97 ¶ 32.)

## VI.    Roumann and Rousse's Claims Against Symbiont in *Roumann I*.[8]

On October 13, 2017, a few weeks after Symbiont made a payment to Roumann, Roumann filed its first lawsuit against Symbiont, Eastern District of Wisconsin Case No. 17-C-1407 (hereafter, "*Roumann I*".) (R. 118, A-6-7.) Roumann and Rousse filed an amended complaint in *Roumann I* on January 17, 2018, alleging breach of Rousse's employment contract, breach of the Agreement, breach of the implied duty of good faith, a request for an accounting, and also sued Kroger—one of Symbiont's clients. The lawsuit sought tens of millions of dollars in damages, including 30% of the theoretical profits that Rousse and Roumann contend Symbiont would have generated if it had not terminated the Agreement. (R. 97 ¶ 38.) Rousse and Roumann did not raise concerns about the potential use or misuse, or Symbiont's possession, of confidential information in any of the pleadings in *Roumann I*.

## VII.   Symbiont's Counterclaims Against Roumann.

Symbiont asserted counterclaims in *Roumann I*, seeking a declaration that Roumann was not entitled to any post-termination commissions because Rousse, on behalf of Roumann, had engaged in willful misconduct (Symbiont's client

---

[8] The District Court dismissed most of the claims contained in the present case on the grounds that it involved the same operative facts and parties as another lawsuit in the same court. (R. 14, A-14-16). Therefore, we discuss the applicable portions of that case here.

Menards had banned Rousse from entering its property, Rousse requested that

Symbiont advise a government agency that he did not have a written

employment agreement or written contract with Symbiont), and Roumann had

materially breached the Agreement by failing to return Symbiont's property and

*Symbiont's* confidential information following termination. (R. 14, A-7.)

### VIII.  Roumann Seeks Leave to File a Second Amended Complaint.

On March 20, 2018, Rousse and Roumann sought leave to file a second

amended complaint. (R. 14, A-8.) They sought to add Symbiont Science,

Engineering, and Construction, Inc. as a party that should be liable under alter

ego theories and sought to add a claim for intentional interference with

prospective business relations. (*Id.*) That claim was based on allegations that

Symbiont engaged in wrongful conduct, such as disparagement, that disrupted

Rousse and Roumann's relationships with the end-clients that Symbiont had

previously contracted with (*i.e.*, The Fresh Market, Kroger, Menards). (*Id.*)

Rousse and Roumannn's stated basis for the request, which came after the

deadline to amend pleadings had passed, was that after Symbiont "provided

open access to its computerized accounting system," and when Rousse and

Roumann reviewed the data contained therein, they discovered the existence of

new claims and a new party. (*Id.*; *Roumann I* ECF No. 30; *Roumann I* ECF No. 23 ¶¶ 2-3.)

On May 7, 2018 the District Court denied Rousse and Roumann's motion for leave to file the proposed second amended complaint. (R. 14, A-8; R. 90-12.)[9] The Court noted that the motion was made more than six weeks after the February 8, 2018 scheduling order deadline to amend pleadings and that Rousse and Roumann, therefore, had the burden of demonstrating "good cause" for the late request. (*Id.*) The Court found that Rousse and Roumann had been on notice of the existence of the "new" party to be added since before they filed the lawsuit, and that they had failed to offer any explanation as to why they had waited so long to assert the new claims. (*Id.*)

## IX. Symbiont Deposits $550,000 into the Court Registry Investment System.

On June 25, 2018, Symbiont filed a Rule 67 motion to deposit $550,000 into the District Court's registry system in *Roumann I*. (*Roumann I*, ECF 35.) In its motion, Symbiont acknowledged that if Rousse and Roumann were to succeed on their breach of contract claims and if Symbiont did not prevail on its

---

[9] References to the docket entries in the district court proceedings in *Roumann I* are referred to as "*Roumann I ECF __*." Most decisions from *Roumann I* are also contained in the record for this action, and those that are not are subject to judicial notice by this Court. *In the Matter of Lisse*, 905 F.3d 495, 497 (7th Cir. 2018).

counterclaims, then Symbiont would be liable to Rousse and Roumann for

commissions. At the time of the motion, Symbiont calculated the estimated

amount of commissions that would be due to be $365,738.03, and deposited the

additional amount to address any additional potential commissions that might

become due if Symbiont bid on and was awarded additional projects. (*Id.*) The

Court granted the motion on June 26, 2018, and on July 6, 2018 Symbiont made

the deposit. (*Id*. 07/06/2018 – Financial Entry.) The funds remain on deposit, as

*Roumann I* is still pending.

## X.    Roumann Files Its Second Lawsuit Against Symbiont.

After the District Court denied Rousse and Roumann's motion for leave to

file a second amended complaint, and with *Roumann I* still pending, Rousse and

Roumann filed this case on October 2, 2018. (R. 1.) They brought thirteen claims

against three Symbiont entities and four Symbiont executives, asserting many of

the same claims as those either at issue in *Roumann I* or which the District Court

had prohibited them from bringing in *Roumann I* for failure to show good cause.

(R. 1; R. 14, A-8-10.)[10] Like *Roumann I*, the complaint in this case concerned

Rousse's employment, the Agreement, and the alleged breaches of those

---

[10] A chart comparing the claims and counterclaims in *Roumann I* with those in this case is at R. 5
at 6-8.

contracts. (R. 1.) The new complaint also raised, for the first time, the contention that Symbiont had misused Rousse and Roumann's confidential information.

In the one year that followed termination of the Agreement, neither Rousse nor Roumann had raised the issue of Symbiont's alleged possession or misuse of confidential information. (R. 118, A-35.) After filing this case, Rousse and Roumann sent Symbiont a cease-and-desist letter on October 3, 2018. (*Id.*) That letter did not identify any specific confidential information, did not mention Procore, and did not reference any database of information. (*Id.*; R. 12-1.)

Count VI of the complaint concerned Rousse and Roumann's allegation that each of the Symbiont entities and four of its owners and managers conspired to injure Rousse and Roumann in their business, in violation of Wisconsin Statute Section 134.01. (R. 14, A-10; R. 1 ¶¶ 143-152.) The complaint alleged that in August 2017, prior to sending the notice of termination of the Agreement at issue in *Roumann I*, the individual defendants met and decided to exercise Symbiont's right to terminate the Agreement, and then later conspired to withhold commission payments that were due in an effort to get Roumann to accept a lump sum payment. (*Id.*) The Complaint characterized this conduct as an

actionable conspiracy to injure Roumann's business in violation of Wisconsin

Statute Section 134.01. (*Id.*)

### XI.    The District Court Dismisses All Claims Except Those Relating to Confidential Information.

Symbiont moved to dismiss all claims in this action on the grounds that

the claims were duplicative of claims in *Roumann I*, arose from the same factual

basis and therefore violated the anti-claim splitting doctrine, and for the

independent reason that they failed as a matter of law. (R. 4; R. 5.)

On August 23, 2023, the District Court granted the motion to dismiss as to

all claims except those involving the purported misuse of confidential

information. (R. 14.) The District Court found that the new complaint was based

largely on the same factual matter as *Roumann I* (*i.e.,* the termination of the

Agreement, failure to pay amounts due under the employment agreement and

the Agreement, and complaints about Symbiont's handling of projects, bidding,

and end-clients which eroded Rousse and Roumann's potential profits). (R. 14,

A-9-10.)

Regarding Count VI, the District Court found that the claim arose out of

Symbiont's actions in terminating the Agreement, and later alleged refusal to pay

commissions. Thus, Count VI was just a different legal theory for seeking relief

from the same basic grievances alleged in *Roumann I*. (R. 14, A-15.) Therefore, the District Court dismissed Count VI on the ground that it violated the anti-claim splitting doctrine. (R. 14, A-15-16.)

As an alternative ground for dismissal of Count VI, the District Court found that the complaint failed to state a claim for relief because a business decision made by the managers of a company is not legally considered to be a product of a conspiracy and because Rousse and Roumann pleaded themselves out of Court by alleging that the parties acted with rational business motives. (R. 14, A-21.) The District Court held that Wisconsin Statute Section 134.01 requires allegations of malice, meaning an allegation that defendants had an irrational desire to harm for harm's sake with a motive that does not make rational sense. (R. 14, A-20-21.)

Here, the Complaint alleged that Symbiont and its managers had decided to terminate the agreement and pay commissions, wanted to "force a different, considerably lower, lump sum settlement," and then when Rousse and Roumann did not want to negotiate a lump sum payment, took the position that Rousse, on behalf of Roumann, had engaged in Willful Misconduct, was not entitled to

commission payments, and ceased making payments. (R. 1. ¶¶ 78-79; R. 14, A-22.)

The District Court determined that Rousse and Roumann undermined their allegations of malice by pleading a rational business purpose: that the individual defendants had acted rationally in furtherance of Symbiont's business interests by terminating a contractor deemed to be overcompensated and expendable while trying to also minimize the amounts of commissions to be paid and the impact of terminating the relationship. (R. 14, A-22; R 1, ¶¶ 45, 48, 49, 51, 54, 59, 71, 143-152.) Based on those allegations, the District Court found Rousse and Roumann pleaded themselves out of court by alleging facts that showed it did not have a legal claim. (R. 14, A-22.)

## XII.   The Parties Move for Summary Judgment.

After engaging in extensive discovery, each party moved for summary judgment. (R. 79; R. 87.) Portions of three claims survived the motion to dismiss, and each involved the alleged misuse of Confidential Information: Count IV – Declaration of Misuse, Count VII – Conversion, and Count XI – Unjust Enrichment. (R. 14, A-10-11.) Symbiont moved for summary judgment on the basis that (1) Rousse and Roumann had failed to identify any specific materials meeting the Agreement's definition of "Confidential Information," (2) Rousse

and Roumann failed to identify any actual use, or misuse, by Symbiont of the

information, and (3) as a matter of law, Symbiont not could have converted the

information because Rousse and Roumann maintained access to their copy of the

information. (R. 88.)

Throughout the litigation, Rousse and Roumann's description of what

constituted their "Confidential Information" evolved, ultimately culminating

during summary judgment briefing where they alleged Procore itself, and "close

to 100% of the data stored in Procore," constituted Rousse and Roumann's

Confidential Information. (R. 82 ¶ 42; R. 118, A-37) Accordingly, Rousse and

Roumann contended that any use by Symbiont of Procore to bid on work of any

kind constituted an actionable misuse of confidential information.

## XIII.   The District Court Grants Symbiont's Summary Judgment Motion.

The District Court granted Symbiont's motion for summary judgment,

concluding that Rousse and Roumann failed to carry their burden of production

on an essential element of each remaining claim – that is, that Symbiont

possessed and used Rousse and Roumann's confidential information in violation

of the Agreement's terms. (R. 118, A-37, A-48.) The District Court found that the

record showed that the information Rousse and Roumann now claimed to be

their Confidential Information consisted primarily of Symbiont's own bid and

project history and information, and that uploading it to Procore did not convert it into Rousse and Roumann's Confidential Information.

## SUMMARY OF ARGUMENT

This is the second of two lawsuits that the Plaintiffs-Appellants, Ronald Rousse and his company, Roumann Consulting, filed against Symbiont. Rousse and Roumann brought this case after seeking leave to file a second amended complaint in *Roumann I*, a request the District Court denied on account of the movants' failure to demonstrate good cause. The majority of claims in this suit arise out of the same facts and circumstances as *Roumann I*, which is a still-pending lawsuit. Included in those claims was Count VI, for the alleged conspiracy to injure Rousse and Roumann's business. Symbiont moved to dismiss the claim (and others).

Count VI of the Complaint was properly dismissed on two independent grounds. First, it is barred by the anti-claim splitting doctrine because it arises out of the same facts alleged in *Roumann I*—namely, Symbiont's actions in deciding to terminate the Agreement and then refusing to pay commissions. The District Court did not abuse its discretion in dismissing Count VI on these grounds.

On appeal Rousse and Roumann do not explain why they filed a new case, nor do they explain how the claim does not arise out of the same facts and transactions as *Roumann I*. Instead, they argue (for the first time on appeal) that discovery in *Roumann I* revealed information undermining Symbiont's counterclaim (in *Roumann I*). That argument, even if not waived, illustrates that the claim was properly dismissed as violating the anti-claim splitting doctrine.

Count VI, as alleged, also fails to state a claim for two reasons: (1) a corporate entity and its managers cannot conspire with themselves (which is what the Complaint alleges), and (2) the Complaint fails to sufficiently allege malice, which is required to state a claim for civil conspiracy. The Complaint alleges that the individual Symbiont managers met, decided Roumann was overpaid, desired to terminate the Agreement, and then later improperly characterized the termination as one for willful misconduct. Thus, the Complaint did not allege malicious conduct (*i.e.*, irrational business motives), an effort to cause harm for harm's sake, or a motive that does not make sense. Instead, the Complaint *did* allege *rational* business motives (minimizing cost, increasing profit) which the District Court found resulted in Rousse and Roumann pleading themselves out of court. A plain reading of the allegations of the Complaint—all

of them—reveals both the lack of alleged malice and the rational business motives for the individual managers' decision to terminate the Agreement.

The District Court dismissed the remaining claims following cross-motions for summary judgment. The remaining issues in this case all involved Rousse and Roumann's allegation that Symbiont improperly used its confidential information. After examining the undisputed material facts before it, the District Court, on the parties' cross-motions, found that no reasonable jury could conclude that Symbiont used confidential information belonging to Roumann in violation of the parties' Agreement. It elaborated that Rousse and Roumann never identified a particular piece of their confidential information, nor did they ever allege, much less prove, that Symbiont misused it.  Faced with that lack of proof, Rousse and Roumann, then and now, pivoted, alleging that Symbiont's use of its own construction management program, Procore, constituted a misuse of their confidential information. Rousse and Roumann argue that over time, including as they bid and secured work on behalf of Symbiont, they kept a list of contacts and pricing, and that because Symbiont added that information to Procore as part of its normal course of business, Symbiont converted Rousse and Roumann's confidential information. Thus, they contend Symbiont was under a

duty to forget, or otherwise not maintain, contact lists and pricing for its own contracts and the contracts themselves.

As to the surviving claims, which concern the alleged misuse of confidential information, Rousse and Roumann have come no closer here to articulating a meaningful description of what specific information Symbiont misused than they did below. Throughout the litigation, Rousse and Roumann were unwilling or unable to identify any particular item as confidential information and instead provided imprecise categories of confidential information that could not be applied to anything specific. Thus, it was not clear error for the District Court to conclude that a reasonable juror confronted with the record could not find that Symbiont misused any aspect of Rousse and Roumann's alleged confidential information. The District Court's order entering summary judgment dismissing the remaining claims should be affirmed.

## STANDARD OF REVIEW

Symbiont disputes Rousse and Roumann's description of the standard of review.

## I.     Standard of Review of the District Court's Dismissal of Count VI.

The District Court's dismissal of Count VI on the ground that it violated the anti-claim splitting doctrine is reviewed only for an abuse of discretion.

*Scholz v. United States*, 18 F.4th 941, 950-51 (7th Cir. 2021) (case dismissed for claim splitting is reviewed "only for an abuse of discretion"); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888-89 (7th Cir. 2012) (reasoning that when a suit is duplicative, a district court "will reverse only for abuse of discretion").

The District Court's dismissal of Count VI on the alternative ground that it failed to state a claim is reviewed *de novo*.

## II.     Standard of Review of the District Court's Order Granting Summary Judgment.

Although the standard of review generally applicable to summary judgment is *de novo*, when the only issue before the district court is the characterization of undisputed facts and the party opposing the motion is not entitled to a jury trial, the "clearly erroneous" standard of review applies. *McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 575-77 (7th Cir. 2007); *Cent. States, Se. & Sw. Pension Fund v. Slotky*, 956 F.2d 1369, 1373-74 (7th Cir. 1992); *see French v. Wachovia Bank, N.A.*, 722 F.3d 1079, 1084-85 (7th Cir. 2013).

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lapka v. Chertoff*, 517 F.3d 974, 981 (7th Cir. 2008). Here, both parties brought motions for summary judgment on Rousse and Roumann's claims involving

alleged misuse of confidential information. (R. 118, A-27). Because both parties

moved for summary judgment, the parties agreed material facts were not in

dispute. Therefore, the District Court's determination that Rousse and Roumann

failed to meet its burden of production was a characterization of undisputed fact.

Similarly, Rousse and Roumann waived their right to a jury trial.

Wisconsin courts have repeatedly held that a right to a jury trial may be waived

by conduct or stipulation. Wis. Stat. § 814.61(4); *Phelps v. Physicians Ins. Co. of

Wis., Inc.*, 2005 WI 85, ¶ 30, 282 Wis. 2d 69, 689 N.W.2d 643. Rousse and

Roumann did not make a jury demand, and instead opted for a court trial. (R. 1.)

Thus, by waiving their right to a jury trial and because the only issue before the

District Court was the characterization of undisputed facts, the "clearly

erroneous" standard of review applies.

Likewise, the type of question the District Court addressed impacts the

standard of review on appeal. Here, the District Court addressed a mixed

question of law and fact. Namely, it addressed whether Rousse and Roumann

met their burden of production to prove their claims for breach of contract,

unjust enrichment, and conversion (a question of fact) and whether those

productions proved the confidentiality agreement was violated (a question of law).

On appeal, mixed questions may apply either the *de novo* or clear error standard, with the clear error standard applying where courts are immersed in case-specific factual issues. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018). Because the District Court in this case was immersed in case-specific factual issues, the clear error standard of review applies.

## ARGUMENT

I.    **Rousse and Roumann's Claim for Conspiracy to Injure Business (Count VI) Arises from the Same Operative Facts as *Roumann I*, Should Have Been Raised in *Roumann I*, and is, Therefore, Subject to the Rule Against Claim Splitting.**

Rousse and Roumann argue that the District Court erred when it dismissed Count VI of the Complaint as barred by the anti-claim splitting doctrine. However, this conspiracy to injure business claim could have and should have been raised in *Roumann I* because it is based on the same factual allegations at issue in *Roumann I*. Rousse and Roumann could have and should have moved to amend the complaint in *Roumann I* to accommodate this claim.

That they did not was their own litigation tactic, and they should not now be permitted to circumvent their choice.

### A.    The District Court's determination that Count VI was barred by the rule against claim splitting was a matter of docket management, and that determination is reviewed for abuse of discretion not *de novo*.

As a preliminary matter, while the standard of review of an order granting a motion to dismiss is typically *de novo*, here the applicable standard is abuse of discretion. Whether to dismiss a claim as violative of the anti-claim splitting doctrine is a District Court determination based on docket management, which is given deference on appeal. *Scholz*, 18 F.4th at 950. This is because a district court "has 'significant latitude' and 'broad discretion to dismiss a complaint for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Id.* at 951 (quoting *McReynolds*, 694 F.3d at 888-89.). As *Scholz* held, this Circuit "review[s] such decisions for an abuse of discretion." *Id.* Here, the District Court, which was intimately familiar with both *Roumann I* and this case, was and is in the best position to determine how to administer its cases. The District Court's reasoned decision to dismiss Count VI was not an abuse of discretion.

**B.    A case is duplicative and subject to the anti-claim splitting doctrine if the claims, parties and available relief do not significantly differ between the two actions.**

"The rule against claim splitting prohibits a plaintiff from bringing a new case raising issues arising out of the same transaction or occurrence as an earlier case, when those issues could have been raised in the first litigation." *Rexing Quality Eggs v. Rembrandt Enters., Inc.*, 953 F.3d 998, 1002 (7th Cir. 2020). A suit is duplicative and the anti-claim splitting doctrine applies where "the claims, parties, and available relief do not significantly differ between the two actions." *Scholz*, 18 F. 4th at 951 (citations omitted).

In determining whether a second lawsuit is barred as duplicative, the court looks to whether there is "an identity of the parties in the two suits" and "an identity of the causes of action." *Id.* (citation omitted). Further, dismissal is appropriate where "the same party has filed both suits, and the claims and available relief do not significantly differ between the two actions." *Wallis v. Fifth Third Bank,* 443 Fed. App'x 202, 205 (7th Cir. 2011). All of the elements for the anti-claim splitting doctrine are present here.

In *Roumann II,* and specifically with regard to Count VI, the claimants are the same, and so are the defendants, with the addition of the holding company, its second subsidiary, and officers of the defendant in *Roumann I.* Both Rousse

and Roumann are the claimants in *Roumann I* and *Roumann II*. That they sued the officers of Symbiont and Symbiont Holding and Symbiont Science in addition to Symbiont in *Roumann II,* but only sued Symbiont in *Roumann I,* is immaterial. In looking to the identity of the parties element, courts consider privity. *Horwitz v. Alloy Auto. Co.* 992 F.2d 100, 103 (7th Cir. 1993). Where corporate defendants are alleged to be acting in concert as a single entity under veil-piercing theories (the basis for Rousse and Roumann's claims against Symbiont Holding and Symbiont Science (R. 14, A-13; R. 1 ¶ 88)) they are in privity for the identity of the parties element. *Torain v. AT&T Mgmt. Servs., LP,* 353 Fed. App'x 37 (7th Cir. 2009). Further, officers are deemed in privity with the corporation for which they work. *E.g., Horwitz,* 992 F.2d at 103.

In considering whether there is an identity between the causes of action, courts look to whether the claims "arise out of the same set of operative facts or the same transaction." *Scholz,* 18 F.4th at 952 (citation omitted). However, "the legal theories for the claims in each case need not be the same provided they are based on the same, or nearly the same, factual allegations." *Id.* (citations omitted).

Such is the case here. The conspiracy to injure business claim alleges that Symbiont and the named officers held a meeting in August 2017 where they decided to terminate the Agreement, and then elected to file a counterclaim in *Roumann I*, even though one of the officers, Ed Manning, did not have personal knowledge supporting the basis of the counterclaim, namely the Agreement's definition of "Willful Misconduct." (R. 1 ¶¶ 54, 75, 79, 144). *Roumann I* arises from the same "set of operative facts." The claim involves the termination of the Agreement, Rousse and Roumann's contention that the post-termination correspondence between the parties formed the basis of a new contract, and of course, Symbiont's counterclaim (which was, itself, a part of *Roumann I*). Whether there was a conspiracy, of any nature, surrounding the decision to terminate the Agreement and on what grounds would have squarely arisen out of the same set of operative facts and the same transaction (the termination of the Agreement) at issue in *Roumann I.*

Moreover, this is not just contemplated overlap, but *actual*—the District Court's discussion, treatment, and ruling on these issues was litigated in *Roumann I*, and was done so after Rousse and Roumann filed *Roumann II*. In February 2019, Roumann filed its Motion for Summary Judgment on Symbiont's

Counterclaims in *Roumann I*, which the District Court granted on August 1, 2019. (*Roumann I*, ECF Nos. 52 and 86). Thus, the basis of Rousse and Roumann's conspiracy to injure business claim in *Roumann II* arose out of the factual circumstances of the litigation surrounding *Roumann I*.

Moreover, as Rousse and Roumann admit in their opening brief, "This case [*Roumann II*] was filed before a judgment was issued in [*Roumann I*]" and was "based upon actions that were not known until 2018." While Rousse and Roumann argue this timing meant they had to initiate a new lawsuit, such is not the case. This timing means that the issues in *Roumann I* relating to the counterclaims and the basis for termination for willful misconduct had not yet been fully adjudicated, and Rousse and Roumann were free to move to amend the complaint in *Roumann I* to bring this injury of business claim based on good cause and new evidence. *C.f. Rexing Quality Eggs*, 953 F.3d at 1003 (applying anti-claim splitting doctrine notwithstanding plaintiff's argument that not all facts pertaining to claim were known at the time the first action was filed, where facts arose out of same transaction at issue in the first action). Rousse and Roumann knew how to seek leave to amend, of course, because they amended their

complaint once, then sought leave to amend it a second time, a request denied by the District Court.

Rousse and Roumann have never explained why they filed a new lawsuit, which in some cases repeats allegations word-for-word, instead of requesting leave to amend. The only plausible explanation—that they were seeking to avoid the good cause standard governing any additional motions for leave to amend under Federal Rules of Civil Procedure 15 and 16—illustrates the impropriety of the tactic and the reason for the anti-claim splitting rule. Indeed, seeking leave to amend versus filing a new action is not a distinction without a difference. Rule 15(a)(2) provides that a party may only amend pleadings with the other party's consent or leave of court. As a corollary, Rule 16(b) requires the district court to issue a scheduling order that limits the time to amend the pleadings and provides that such schedule may only be modified for good cause. This Circuit has consistently held that where the deadline to amend the pleadings in the scheduling order has passed, Rule 16(b)'s good cause standard applies. *See e.g. Alioto v. Town of Lisbon*, 651 F.3d 715, 719-20 (7th Cir. 2011). However, all that is required to state a claim for relief under Federal Rule of Civil Procedure 8 is a

"short and plain statement of the claim showing that the pleader is entitled to relief."

Without the anti-claim splitting doctrine, litigants far and wide would forego the more stringent good cause standard to amend and simply file a new action whenever they learned about new potential causes of action after the expiration of time to amend in the scheduling order. To countenance this tactic would be to deprive the District Court (most familiar with the aspects of the case) of its ability to administer its docket, and allow any jilted litigant to take another "bite at the apple." *Scholz*, 18 F.4th at 953 (citation omitted). Rousse and Roumann's failure to secure relief from the alleged wrongs in *Roumann I*, whether for failure to comply with procedural requirements, lack of merit, or though intentional tactical decision, does not entitle them to take another "bite at the apple." Indeed, Rousse and Roumann have suffered no prejudice, as they had ample opportunity to litigate the issues they now seek to resurrect, and to the extent they did not, any prejudice was caused by the tactical decision to not pursue the claim in *Roumann I*. As such, the Court did not err, and certainly did not abuse its discretion in dismissing Count VI pursuant to the anti-claim splitting doctrine. This Court should affirm that discretionary act.

## II.    The Court did not Err in Finding that the Injury to Business Claim Also Required Dismissal on the Merits.

As an alternative grounds to dismissing Count VI, the District Court found that Rousse and Roumann failed to state a claim for Injury to Business because (1) they failed to plead the requisite malice, alleging facts that rose only to a rational business motive, and (2) the allegations demonstrated only that the alleged parties to the conspiracy were acting on behalf of Symbiont, and a business cannot conspire with itself. Faced with the reality that the District Court properly ruled, Rousse and Roumann are now arguing a new theory of malice that was neither plead in the complaint nor argued below. Because that argument is waived and because the complaint cannot state a claim for injury to business, Count VI was properly dismissed on these alternative grounds to the anti-claim splitting doctrine.

### A.    Rousse and Roumann have concocted a new theory of malice on appeal and the Complaint itself alleges a rational business motive.

To state a claim for Section 134.01 liability, a plaintiff must show that the defendants acted with malice in injuring plaintiff's business. *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 86, 469 N.W.2d 629 (1991). Indeed, Section 134.01 only prohibits harm prompted by "an *irrational* desire to cause harm for

the sake of harm." *Virnich v. Vorwald*, 664 F.3d 206, 213 (7th Cir. 2011) (emphasis in original).

Here, the Complaint was insufficient to state a claim. In their opening brief, Rousse and Roumann now characterize the alleged malice as follows: "The defendants discussed and were aware that they had no claim for willful misconduct, but then waited until after Mr. Rousse had cooperated with the transfer of the projects, and then asserted something that they knew to be a frivolous counterclaim seeking to avoid payment." (Opening Br. at 28.) However, this is a revisionist showing of the alleged malice that Rousse and Roumann did not argue below. The Complaint describes the alleged malice as follows:

> The defendants acted together maliciously and intentionally, to induce Mr. Rousse and Roumann Consulting to refrain from competing, contacting customers, contacting subcontractors, contacting project managers, by making false promises of payment and payment procedures, with full knowledge that their real intention was to steal Mr. Rousse's and Roumann Consulting's Customers and Confidential Information without making the payments required by the Independent Contractor Agreement. After they accomplished this initial goal, the defendants acted together, maliciously and intentionally, by terminating promised payments, in order to force Mr. Rousse and Roumann Consulting to accept a payment that is less than is otherwise owed under the Independent Contractor Agreement.

(R. 1 ¶ 144.) Nowhere in Count VI do Rousse and Roumann further identify maliciousness or in any way attempt to tie it to the filing of the allegedly frivolous counterclaim. Indeed, in responding to the Motion to Dismiss in the District Court, Rousse and Roumann only cite Complaint ¶ 144 as the basis of malice and do not otherwise cite to counterclaims. (R. 10 at 24.) Thus, Rousse and Roumann's new theory of malice is not properly before this Court and is waived. *E.g. Lane v. Structural Iron Workers Local No. 1 Pension Tr. Fund*, 74 F. 4th 445, 450 (7th Cir. 2023) ("Arguments not made in the district court are waived on appeal.") This Circuit does not "reverse district courts for failing to address arguments they never heard." *Id.* at 451.

Instead, as alleged and argued below, the basis of the claim is that the parties held a meeting and elected to terminate the Agreement out of an alleged belief that Roumann was overcompensated, then attempted to induce Roumann from competing by making promises to pay, and then terminating payments in an attempt to force Roumann to accept a reduced payment from what was contractually required. Even assuming those allegations are true, they constitute rational business motives in dealing with a problematic contractor and attempting to expend as little amounts possible in post-termination

compensation. Thus, the District Court properly determined Rousse and

Roumann pleaded themselves out of court with regard to the malice element.

### B.     The Complaint does not allege self-interest among the corporate officers.

A corporation cannot conspire with its principals, agents or employees

because the acts of a corporate agent are the acts of the corporation and a

corporation cannot conspire with itself. *See Elbe v. Wausau Hosp. Ctr.*, 606 F. Supp.

1491, 1502 (W.D. Wis. 1985) (dismissing plaintiff's Wis. Stat. § 134.01 claim);

*McCluney v. Jos. Schlitz Brewing Co.*, 489 F. Supp. 24, 26 (E.D. Wis. 1980) (same).

The exceptions to this rule are where the complaint alleges defendants acted on

their own behalf or outside the course of their corporate duties. *See Elbe,* 606 F.

Supp. at 1502.

Rousse and Roumann argue here and below that they alleged that the

individual defendants were acting to "enrich themselves" and cite to Complaint

paragraphs 43-50, 78-79, 93, and 144-45. (Opening Br. at 28; R. 10 at 25.) However,

none of these paragraphs support this argument. These paragraphs allege that (1)

Rousse and Roumann helped Symbiont Construction bring in large amounts of

revenue, (2) the commissions Rousse and Roumann brought in exceeded the

salaries of the corporate officers in 2015 and 2016, prior to the 2017 termination,

38

(3) that Roumann shared confidential information, (4) that the officers believed Roumann was overcompensated, attempted to persuade Roumann to lower rates, and stated that Roumann was unnecessary to Symbiont's business, (5) that after termination Symbiont withheld payments under the Independent Contractor Agreement to force a reduced payment, and later filed counterclaims for willful misconduct, (6) that the officers damaged Roumann's reputation and professional relationships, and (7) that they acted with a common purpose in doing so. (R. 1 ¶¶ 43-50, 78-79, 93, 144-45.) Rousse and Roumann do not explain in the Complaint, in their briefing to the District Court, or in their opening brief here, how any of those allegations allege the requisite self-interest among the corporate defendants.

The mere fact that the officers are also shareholders in the company is not enough to show that they were acting to enrich themselves rather than acting for the best interests of the company in terminating the Agreement. Something more must be required, such as a motive to take the stock of another shareholder, or to replace a contractor with a less experienced family member of an existing shareholder. *See, e.g. Mendelson v. Blatz Brewing Co.*, 9 Wis. 2d 487, 493, 101 N.W.2d 805 (1960). No such facts are alleged, are present in the record, or exist in

reality. In unextraordinary actuality, the business relationship soured and Symbiont terminated the contract. The officers were acting on behalf of the corporation, and so the District Court properly ruled there could be no conspiracy.

As such the Court did not err in dismissing Count VI of the Complaint for failure to state a claim.

### III.  Rousse and Roumann Failed to Identify Specific "Confidential Information" Subject to Protection under the Agreement or that Symbiont Misused that Information.

The District Court properly granted summary judgment dismissing Rousse and Roumann's remaining claims regarding the alleged misuse of confidential information after finding that Rousse and Roumann failed to put forth evidence from which a reasonable factfinder could conclude Symbiont misused their confidential information. There are myriad reasons why Rousse and Roumann's remaining claims were properly dismissed on summary judgment, including those the District Court found, and upon any of which this Court may and should affirm. *See e.g. Lane*, 74 F. 4th at 450 ("[W]e can affirm on any basis supported by the record….").

**A.  The District Court's determination that Rousse and Roumann failed to show Symbiont misused any alleged Confidential Information was based on undisputed facts and so the Court reviews this determination under a "clearly erroneous" rather than *de novo* standard.**

While the standard of review for summary judgment is typically *de novo*, in this instance, the standard of review on the District Court's entry of summary judgment in favor of Symbiont is clear error. When the only issue before the district court is the characterization of undisputed facts, and the party opposing the motion is not entitled to a jury trial, the "clearly erroneous standard applies." *McDougall*, 494 F.3d at 575-77; *Cent. States, Se. & Sw. Pension Fund*, 956 F.2d at 1373-74; *see French*, 722 F.3d at 1084-85. Similarly, where the district court addressed mixed questions of law and fact and is "immerse[d] in case-specific factual issues" in issuing its opinion, the "clear error standard is appropriate. *U.S. Bank Nat'l Ass'n*, 138 S. Ct. at 963, 967.

Here both parties brought cross-motions for summary judgment on the same issues – that is that Roumann and Rousse's information constituted confidential information and that Symbiont misused that information. As such they implicitly agreed that the material facts are not in dispute. Further, when the Court issued its order, its determination that Rousse and Roumann failed to meet their burden of production or proof that the information at issue was

confidential information and that Symbiont misused it, was a characterization of the undisputed facts.

Further, Rousse and Roumann waived their right to a jury trial. Wisconsin courts have repeatedly held that a right to a jury trial may be waived by conduct or stipulation. Wis. Stat. § 814.61(4); *Phelps*, 2005 WI 85, ¶ 30. The same is true in Federal Court. *See* Fed. R. Civ. P. 38 and *United States v. Resnick*, 594 F.3d 562, 569 (7th Cir. 2010) (finding defendant waived his right to a jury trial by failing to serve and file a jury demand within the time provided in Rule 38 and by remaining silent until after the district court entered judgment.) Here, Rousse and Roumann did not make a jury demand according to Rule 38 (R.1), nor have they ever requested a jury throughout the District Court Proceedings.

The clear error standard is appropriate here since the District Court was "immerse[d] … in case-specific factual issues." *U.S. Bank Nat'l Ass'n*, 138 S. Ct. at 967. In applying the law on agency in its holding to discuss ownership or entitlement to the information at issue, the District Court did so with a clear analysis and command of the facts, and in particular Rousse and Roumann's history working with Symbiont and the development of the alleged confidential information and Symbiont's use of Procore. *See e.g.* (R. 118, A-37-45.) It did not

simply expand on broad legal standards, which would lend to an application of a

*de novo* standard. *U.S. Bank Nat'l Ass'n*, 138 S. Ct. at 967. Indeed, that the Court

ultimately found that Rousse and Roumann had not "submitted evidence from

which a reasonable trier of fact could conclude that the Excel files were created

independently of Rousse and Roumann's work for Symbiont" (R. 118, A-44)

demonstrates how immersed in the facts the District Court was in making its

ruling. In so ruling the court weighed the evidence, assessed credibility and

addressed these particular facts, which all indicate a factual finding against

which the "clear error" standard should be applied. *U.S. Bank Nat'l Ass'n*,

138 S.Ct. at 967-69. As such, the Court's decision and order on summary

judgment should be assessed using the "clear error" standard.

### B.     Rousse and Roumann never established with any meaningful degree of specificity what his Confidential Information consisted of, even in response to a dispositive motion.

Despite bearing the burdens of both proof and production on each of its

claims, Rousse and Roumann failed to establish, define or identify what

"Confidential Information" they contend Symbiont misused. (R. 97 ¶¶ 45-54, 58-

77.) Importantly, both here and in their opening brief on summary judgment in

the District Court, Rousse and Roumann contended that all but one document in

Symbiont's document production (which totaled over 75,000 documents)

constituted their confidential information and relied fully, and exclusively, on the definition of confidential information in the Agreement as to what constituted their confidential information. (R. 118, A-37; R. 80 at 14 *citing* R. 81 ¶ 79.) In a case exclusively about the alleged misuse of confidential information, it is simply insufficient to refuse (or be unable) to identify the specific information at issue. It is certainly insufficient to survive summary judgment.

"Allegations that [a defendant] disclosed entire categories of information are both too vague and too inclusive [and] cannot survive summary judgment." *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10-C-1046, 2013 WL 6255689, at *9 (E.D. Wis. Dec. 4, 2013) (finding that failure to "specifically identify the allegedly confidential information" precluded liability on a claim for breach of confidentiality provisions); *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (finding claimant "has been both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret.").

Rousse and Roumann's contentions as to confidential information have been a moving target. Initially, for a year after termination of the Agreement, they said nothing about the alleged misuse of confidential information. Then,

when asked to itemize what it consisted of (so that Symbiont could return it),

Rousse and Roumann simply parroted the definition from the Agreement. Then,

during discovery, they stated that lists of subcontractors used in prior jobs that

Symbiont performed for Kroger, The Fresh Market and Menards constituted

confidential information, likely based in part on the Agreement's inclusion of

"client, prospective client and contact lists." (R. 97 ¶¶ 45-54, 58-77.)

Then, Rousse contended that the contact information for "all employees"

of Kroger, Menards, and The Fresh Market constituted "his" Confidential

Information. (R. 97 ¶ 58.) The District Court gave Rousse and Roumann the

benefit of the doubt and assumed that their confidential information consisted of

customer or contact lists that Rousse created prior to his December 2011

employment with Symbiont, that were not updated with information he used

during his employment with Symbiont. (R. 118, A-45.)

However, such information cannot constitute confidential information and

cannot be confidential as a matter of law because it is publicly available in public

directories and on the internet. (R. 97 ¶ 79); *See e.g. Sasqua Grp., Inc. v. Courtney*,

No. CV 10-528, 2010 WL 3613855, at *15 (E.D. N.Y. Aug. 2, 2010) (collecting cases

pertaining to client lists containing publicly available information being "readily

ascertainable" and not confidential); *Abbott Laboratories v. Norse Chem. Corp.*, 33 Wis. 2d 445, 466 n.18, 147 N.W.2d 529 (1967) (finding that information that is "readily acquired either through simple observation or the use of public directories [is] not confidential or secret information . . . [because] [t]he obvious cannot be secret."). Indeed, the Agreement expressly states that Confidential Information can only be information that "is not generally known to the public" (R. 82-2.)

Further when such lists are generated in the ordinary course of business, or contain information known outside of the business, they are not protected under the law. *See Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 216-218, 267 N.W.2d 242 (1978) (declining to provide legal protection to customer list pursuant to contractual protections); *Abbott Laboratories*, 33 Wis. 2d at 467 ("[c]ustomer lists are on the periphery of the law of unfair competition, because legal protection does not provide as much incentive to compile lists and because most are developed in the normal course of business anyway.") Symbiont necessarily worked with the client contacts on its own projects in the ordinary course (R. 118, A-39) and Rousse and Roumann, on behalf of Symbiont, was not the exclusive bidder for this work. (R. 97 ¶ 36.)

Rousse and Roumann's inability to define the specific confidential

information at issue is alone grounds to affirm.

### C. Rousse and Roumann never established that Symbiont used their "Confidential Information" in contravention of the Agreement and insufficiently relies only on Symbiont's use of Procore to allege misuse.

The record is devoid of any contention, let alone proof, that on any

particular date Symbiont used any particular piece of purported confidential

information in violation of the Agreement. Instead, Roumann has only – and can

only—contend that Symbiont "used Procore," a construction management

program used throughout the industry, that allowed Symbiont to automate the

administrative aspects of its bidding and project management work for its

clients. (R. 118, A-33.) Symbiont did not breach the Agreement by using Procore,

or any of its own information. Procore allowed Symbiont to message

subcontractors and store project plans, contracts and other project documents

that subcontractors and project managers could access during the bidding

process and in performing the contract once awarded. (*Id.*) Rousse and Roumann

did not use, and have never used Procore (R. 97 ¶ 29.)

Rousse and Roumann's contention is that their confidential information

was input to Procore, Symbiont used Procore generally on projects, and so

Symbiont used Rousse and Roumann's confidential information. However,

Rousse and Roumann have put forth no evidence of any instance where

Symbiont input confidential information into Procore, nor any instance where

Symbiont used or even accessed such piece(s) of confidential information.

(R. 118, A-46-47.)

Without such evidence Rousse and Roumann are left with an assertion that

general use of a database constitutes the opportunity for misuse of various

aspects of the alleged confidential information that may or may not exist in that

database, without need to show that such confidential information was accessed

or used. Stated differently, Rousse and Roumann believe they only need to create

an inference of misuse to survive summary judgment. Such belief is belied by

both common sense, and more importantly, the law. *See e.g. Raytheon Co. v. Cray,*

*Inc.*, 330 F.R.D. 525, 551 (W.D. Wis. 2019) (finding that "opportunity alone" is not

enough to show conversion of or unjust enrichment related to confidential

information and such "limited proof instead invites rank speculation by the trier

of fact.")

Rousse and Roumann further ignore, but do not dispute, that the identity

and contact information of subcontractors as well as their pricing on any given

project is included on the contracts between the big box retailer and Symbiont

and on the other project documents in addition to appearing on any contact lists

Rousse and Roumann allege they maintained. (R. 118, A-39, A-42.) Symbiont, not

Rousse or Roumann, was the general contractor on each of the projects awarded

while the litigants were working together; thus, it was Symbiont rather than

Rousse or Roumann who entered into the contracts directly with clients and

subcontractors (R. 118, A-39, A-41). Thus, regardless of whether Rousse and

Roumann's confidential information was input to Procore, the fact that Procore

housed contracts and other project documents that were incontrovertibly

Symbiont's and that contained the same pieces of information, meant Symbiont

would have had access to this information through its *own* information

belonging to Symbiont. To use or disclose Symbiont's own information is not a

breach of the Agreement, and Symbiont is not required to forget information it

learned from its own sources. *See BondPro Corp. v. Siemens Power Generation, Inc.*,

463 F.3d 702, 709 (7th Cir. 2006) (finding information known to a defendant prior

to disclosure by plaintiff or independently developed by a defendant cannot be

the basis of a misappropriation claim).

49

**D.    The Court correctly held that Rousse and Roumann learned and collected the Confidential Information as a part of their job or contractual responsibilities.**

The focus of the District Court's decision and Rousse and Roumann's appeal on this issue focuses on the fact that the confidential information at issue was mostly, if not wholly, developed between 2011 and 2017, while Mr. Rousse was an employee of Symbiont and Roumann was an independent contractor of Symbiont. The District Court concluded that "anything that Rousse learned within the scope of his employment or agency for Symbiont would have become Symbiont's information the moment he learned it." (R. 118, A-38.)

Such conclusion is based on well-established principles of agency and employment law, and is supported by the principles found in state and federal decisions within and outside of this Circuit as well as treatises. *See e.g. Prime Eagle Grp. Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 378 (7th Cir. 2010) ("[c]orporations do not have brains, but they do have employees. One fundamental rule of agency law is that corporations 'know' what their employees know—at least, what employees know about subjects that are within the scope of their duties."); *Townsend v. ChartSwap, LLC*, 399 Wis. 2d 599, 614-15, 967 N.W.2d 21 (2021) (finding that if an agency relationship exists, the agency's actions are the principal's actions); *State v. Dried Milk Prods. Co-op*, 16 Wis. 2d 357,

361, 114 N.W.2d 412 (1962) ("a corporation acts of necessity through its agents whose acts within the scope of the agent's authority are the acts of the corporation"); *Admiral Ins. Co. v. Paper Converting Mach. Co.*, 2012 WI 30, ¶ 53, 339 Wis. 2d 291, 811 N.W.2d 351 ("A corporation is charged with constructive knowledge of all material facts of which its agent receives notice while acting within the scope of employment, even if the agent did not actually communicate the knowledge to the corporation."); *N. Elec. Co. v. Torma*, 819 N.E.2d 417, 422-25 (Ind. Ct. App. 2004) (finding that compilation of data performed outside of work hours and kept on a personal device but that related to employee's assigned duties was the property of the employer); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1557-58 (S.D. Fla. 1992) (finding that customer list compiled on employee's own time and expense but used to service firm clients was the property of the employer because employee "could not have carried on this business without the [employer] because he did not have the necessary resources to solicit and service these accounts."); and Restatement (Third) of Unfair Competition § 42 cmt. e. (Am. L. Inst. 1995) ("valuable information that is the product of an employee's assigned duties is owned by the

employer, even when the information results from the application of the employee's personal knowledge or skill").

Much of Rousse and Roumann's opposition is based on obfuscation. They mislead the Court by stating in their opening brief that "Mr. Rousse was never an employee of any entity named Symbiont." (Opening Br. at 33.) Rousse and Roumann then attempt to distinguish the relevant case law as being only applicable to employees and thus inapplicable to Rousse and Roumann, which he states are independent contractors. (Opening Br. at 34-36.) In doing so, they attempt to take advantage of the naming conventions the District Court used to identify the parties and ignores the undisputed facts of this case, namely "In December 2011, defendant Symbiont Construction, Inc. ("Symbiont") . . . hired Rousse as an employee. . . . At that time—and for much of the time period relevant to this case—Symbiont was known as T.V. John & Son, Inc. ("T.V. John")." (R. 118, A-28.) In support of this statement, the District Court cited to Rousse and Roumann's response to Symbiont's Proposed Findings of Fact Number 1, in which Roumann did not dispute that "In December 2011, Symbiont Construction, formerly known as T.V. John & Son, Inc., hired . . . Rousse . . . ."

(R. 97 ¶ 1.) Thus, Rousse and Roumann's arguments are disingenuous and must be ignored – these decisions squarely pertain to Rousse as Symbiont's employee.

Furthermore, the agency principles still apply to Roumann notwithstanding the Agreement and its confidentiality provisions. The Agreement provided the scope of Roumann's agency, which included performing "sales, estimating, and project management services" for Symbiont (R. 82-2, Art. I.). Thus the bids that Roumann put together were Symbiont's information that Roumann created for Symbiont's benefit. Likewise, the resulting contracts and project documents were Symbiont's documents as Symbiont was the party to the contract and the general contractor. Not Roumann. Like in *Merrill Lynch*, regardless of when Roumann compiled that information during the scope of his agency, it "could not have carried on this business without [Symbiont] because [it] did not have the necessary resources" to perform the contracts and general contractor role. *Merrill Lynch*, 808 F. Supp. at 1558; (R. 82-2, Art I.). Thus, the basis for the District Court's decision is sound.

**E.    Even if Rousse and Roumann could prove Symbiont used Confidential Information, Symbiont was entitled to use the information to bid on and secure projects following termination of the Agreement.**

Rousse and Roumann do not challenge Symbiont's use of Confidential Information prior to termination of the Agreement (Opening Br. at 37). However, the Agreement expressly contemplates that Symbiont will use Roumann's Confidential Information to bid and work on projects during the two-year period following termination of that Agreement by extending beyond termination the period for which Roumann would be entitled to commissions on the applicable projects. (R. 82-2.) Further, while the Agreement required Roumann to return any Symbiont Confidential Information following termination, it did not require Symbiont to return Roumann Confidential Information; it only required Symbiont to adhere to non-disclosure requirements up to the two-year anniversary of the Agreement's termination, except as necessary for Symbiont to fulfill its obligations under the Agreement. (*Id.*) Implicit in this unilateral return requirement is the understanding that Symbiont Construction would and should use Roumann's Confidential Information to bid projects to yield revenue for *both* Symbiont Construction and Roumann.

Moreover, Symbiont has no obligations regarding Roumann's Confidential Information following the completion of projects bid during the two-year post-termination period. If Roumann wanted additional protections following the two-year anniversary of the Agreement's termination, it could have negotiated for them. (R. 97 ¶¶ 14, 23, 24.) Nor is this a situation where the parties did not contemplate post-termination protections of Confidential Information—the Agreement expressly requires Roumann to return any and all of Symbiont's Confidential Information upon termination. (R. 82-2.) To the extent Roumann did not originally think to include post-termination protections for Confidential Information, the addition of that protection for Symbiont surely should have highlighted the issue then. Its absence is notable and results in no other conclusion but that the parties intended for Symbiont to be free to use any Confidential Information following the two-year termination of the Agreement. *Betz v. Diamond Jim's Auto Sales*, 2014 WI 66, ¶ 38, 355 Wis. 2d 301, 849 N.W.2d 292 (the contract's language evidences the parties' intent).

Once that period expired, the Agreement's survival clause did not extend any confidentiality protections to Roumann, and the integration clause bars any additional protections Rousse and Roumann may attempt to read into the

55

Agreement. And to the extent Rousse and Roumann contends the Agreement

protects their Confidential Information for the rest of time, such interpretation

would render the Confidentiality provisions void as an unreasonable restraint of

trade. *See Gary Van Zeeland Talent, Inc.*, 84 Wis. 2d at 218 (finding that contractual

clauses prohibiting use or disclosure of confidential information without a time

limitation are unenforceable as an unreasonable restraint of trade.) Therefore,

Symbiont had and has no obligation to cease using the alleged Confidential

Information.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be

affirmed.

Dated this 12th day of October, 2023.

GODFREY & KAHN, S.C.

s/*Andrew S. Oettinger*
Andrew S. Oettinger (Counsel of Record)
Christie B. Carrino
833 E. Michigan St., Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Email: Aoettinger@gklaw.com
            Ccarrino@gklaw.com

*Attorneys for Defendants-Appellees*

*Symbiont Construction, Inc., Symbiont Holding Company, Inc., Symbiont Science, Engineering and Construction, Inc., Thomas Bachmann, Sonya K. Simon, Esq., Edward T. Manning, Jr. and Timothy P. Nelson*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P.

32(a)(7)(B) and Circuit Rule 32 because, excluding the parts of the document

exempted by Fed. R. App. P. 32(f), this brief contains 11,630 words.

This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and Circuit

Rule 32 because this brief has been prepared in a proportionally spaced typeface

using Microsoft Word in 13-point Palatino Linotype font.

Dated this 12th day of October, 2023.

GODFREY & KAHN, S.C.

*s/Andrew S. Oettinger*
Andrew S. Oettinger (Counsel of Record)
Christie B. Carrino
833 E. Michigan St., Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Email: Aoettinger@gklaw.com
           Ccarrino@gklaw.com

*Attorneys for Defendants-Appellees*
*Symbiont Construction, Inc., Symbiont*
*Holding Company, Inc., Symbiont Science,*
*Engineering and Construction, Inc., Thomas*
*Bachmann, Sonya K. Simon, Esq., Edward T.*
*Manning, Jr. and Timothy P. Nelson*

**PROOF OF SERVICE**

I hereby certify that on October 12, 2023, the Brief of Defendants-Appellees Symbiont Construction, Inc., Symbiont Holding Company, Inc., Symbiont Science, Engineering and Construction, Inc., Thomas Bachmann, Sonya K. Simon, Esq., Edward T. Manning, Jr. and Timothy P. Nelson was filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 12th day of October, 2023.

GODFREY & KAHN, S.C.

s/Andrew S. Oettinger
Andrew S. Oettinger (Counsel of Record)
Christie B. Carrino
833 E. Michigan St., Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Email: Aoettinger@gklaw.com
        Ccarrino@gklaw.com

*Attorneys for Defendants-Appellees
Symbiont Construction, Inc., Symbiont
Holding Company, Inc., Symbiont Science,
Engineering and Construction, Inc., Thomas
Bachmann, Sonya K. Simon, Esq., Edward T.
Manning, Jr. and Timothy P. Nelson*

29932371.1